1  STEVEN M. SPECTOR (SBN 51623)
       Email: sspector@buchalter.com
2  ANTHONY J. NAPOLITANO (SBN 227691)
       Email: anapolitano@buchalter.com
3  BUCHALTER NEMER
   A Professional Corporation
4  1000 Wilshire Boulevard, Suite 1500
   Los Angeles, California 90017-2457
5  Telephone: (213) 891-0700
   Facsimile: (213) 896-0400
6
7  Attorneys for Debtor and Debtor-in-Possession

8
9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  LOS ANGELES DIVISION

12
13  In re                              Case No. 2:09-bk-15319-SB

14  450 S BURLINGTON PARTNERS, LLC,    Chapter 11

15          Debtor.                    **DEBTOR'S FIRST AMENDED
                                       DISCLOSURE STATEMENT
16                                     DESCRIBING DEBTOR'S FIRST
                                       AMENDED CHAPTER 11 PLAN OF
                                       REORGANIZATION**

17  <u>Disclosure Statement Hearing:</u>

18      Date:      January 12, 2010
19      Time:      2:00 p.m.
        Place:     Courtroom 1575
20                 255 East Temple Street
                     Los Angeles, California 90012
21
22  <u>Plan Confirmation Hearing:</u>

23      Date:      TBD
        Time:      TBD
24      Place:     Courtroom 1575
                   255 East Temple Street
25                 Los Angeles, California 90012
26
27
28

TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................. 2

   A.  Purpose of This Document ............................................................................ 2

   B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing .......................... 3

       1.  Time and Place of the Confirmation Hearing ........................................... 3
       2.  Deadline For Voting For or Against the Plan ........................................... 4
       3.  Deadline For Objecting to the Confirmation of the Plan ............................ 4
       4.  Identity of Person to Contact for More Information Regarding the Plan ......... 4

   C.  Disclaimer ...................................................................................................... 4

II. BACKGROUND ................................................................................................. 4

   A.  Description and History of the Debtor's Business ..................................... 4

   B.  Principals/Affiliates of Debtor's Business ................................................. 5

   C.  Management of the Debtor Before and After the Bankruptcy ..................... 6

   D.  Events Leading to Chapter 11 Filing ........................................................ 6

   E.  Significant Events During the Bankruptcy ................................................ 6

       1.  Bankruptcy Proceedings ........................................................................ 6
       2.  Other Legal Proceedings ...................................................................... 10
       3.  Actual and Projected Recovery of Preferential or **Fraudulent Transfers** ....... 10
       4.  Procedures Implemented to Resolve Financial Problems ........................ 11
       5.  Current and Historical Financial Conditions ......................................... 11

III. SUMMARY OF THE PLAN OF REORGANIZATION ................................. 12

   A.  What Creditors and Interest Holders Will Receive Under The Proposed Plan ................. 12

   B.  Unclassified Claims ................................................................................... 12

       1.  Administrative Expenses ...................................................................... 12
       2.  Priority Tax Claims .............................................................................. 13

   C.  Classified Claims and Interests ................................................................. 13

       1.  Classes of Secured Claims .................................................................... 13
       2.  Classes of Priority Unsecured Claims ................................................... 16
       3.  Class of General Unsecured Claims ...................................................... 16
       4.  Class of Equitably Subordinated Claims ............................................... 17
       5.  Class(es) of Interest Holders ................................................................ 17

   D.  Means of Effectuating the Plan ................................................................. 18

       1.  Funding for the Plan ............................................................................. 18
       2.  Post-confirmation Management ............................................................ 18
       3.  Disbursing Agent ................................................................................. 18

   E.  Risk Factors ............................................................................................... 18

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Page(s)

F.  Other Provisions of the Plan ........................................................................ 18

   1.  Executory Contracts and Unexpired Leases ....................................... 18

      a.  Assumptions ........................................................................ 19
      b.  Rejections ............................................................................ 19

   2.  Changes in Rates Subject to Regulatory Commission Approval ......... 20
   3.  Retention of Jurisdiction. .................................................................. 20

G.  Tax Consequences of Plan ........................................................................... 20

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ................................ 21

A.  Who May Vote or Object ............................................................................ 21

   1.  Who May Object to Confirmation of the Plan ................................... 21
   2.  Who May Vote to Accept/Reject the Plan ........................................ 21

      a.  What Is an Allowed Claim/Interest ...................................... 21
      b.  What Is an Impaired Claim/Interest ...................................... 22

   3.  Who is Not Entitled to Vote .............................................................. 22
   4.  Who Can Vote in More Than One Class ............................................ 23
   5.  Votes Necessary to Confirm the Plan ................................................ 23
   6.  Votes Necessary for a Class to Accept the Plan ................................ 23
   7.  Treatment of Nonaccepting Classes ................................................... 23
   8.  Request for Confirmation Despite Nonacceptance by Impaired Class(es) .... 24

B.  Liquidation Analysis ................................................................................... 24

C.  Feasibility .................................................................................................. 26

V. EFFECT OF CONFIRMATION OF PLAN ......................................................... 27

A.  Discharge .................................................................................................. 27

B.  Revesting of Property in the Debtor ............................................................ 28

C.  Modification of Plan ................................................................................... 28

D.  Post-Confirmation Status Report ................................................................ 28

E.  Quarterly Fees ........................................................................................... 28

F.  Post-Confirmation Conversion/Dismissal .................................................... 28

G.  Final Decree ............................................................................................. 29

VI. SUPPORTING DECLARATIONS ..................................................................... 30

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

# I.

# INTRODUCTION

450 S Burlington Partners, LLC, debtor and debtor in possession ("Debtor"), is the debtor in the above-captioned Chapter 11 bankruptcy case.

On March 10, 2009, Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq. Chapter 11 allows Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization. The Plan may provide for Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.

On December 7, 2009, Debtor filed its First Amended Chapter 11 Plan of Reorganization (the "Plan"). Debtor's Plan is a reorganizing plan. In other words, Debtor seeks to accomplish payments under the Plan through cash flow from operations and, if necessary, capital contributions by Debtor's principals to fund plan payments pursuant to the Plan. Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE FIRST AMENDED DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN (the "Disclosure Statement"). The Effective Date of the proposed Plan is April 1, 2010 or as soon thereafter as practicable.

## A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

## READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:

(1)    WHO CAN VOTE OR OBJECT,

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN

LIQUIDATION,

(3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4)    **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

(5)    **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6)    **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court (the "Bankruptcy Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.    Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2010, at _____ {A.M./P.M.}, in Courtroom 1575 located at the Edward R. Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, California 90012.

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

1    **2.    Deadline For Voting For or Against the Plan**

2    If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

3    and return the ballot in the enclosed envelope to Buchalter Nemer, PC, 1000 Wilshire Boulevard,

4    Suite 1500, Los Angeles, California 90017, Attn: Steven M. Spector, Esq.

5    Your ballot must be received by _____, 2010 or it will not be counted.

6    **3.    Deadline For Objecting to the Confirmation of the Plan**

7    Objections to the confirmation of the Plan must be filed with the Court and served upon

8    counsel to Debtor: Buchalter Nemer, PC, 1000 Wilshire Boulevard, Suite 1500, Los Angeles,

9    California 90017, Attn: Steven M. Spector, Esq. by _____, 2010.

10    **4.    Identity of Person to Contact for More Information Regarding the Plan**

11    Any interested party desiring further information about the Plan should contact counsel to

12    Debtor: Buchalter Nemer, PC, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, California

13    90017, Attn: Steven M. Spector, Esq.; Telephone No. (213) 891-0700.

14    **C.    Disclaimer**

15    The information contained in this Disclosure Statement is provided by Debtor. The

16    financial data relied upon in formulating the Plan is based on Debtor's books and records,

17    financial projections and appraisals prepared for Debtor. Debtor represents that everything stated

18    in the Disclosure Statement is true to the Debtor's best knowledge. The Court has not yet

19    determined whether or not the Plan is confirmable and makes no recommendation as to whether

20    or not you should support or oppose the Plan.

21    **II.**

22    **BACKGROUND**

23    **A.    Description and History of the Debtor's Business**

24    Debtor's principal asset is a 17-unit residential apartment building located at 450 S.

25    Burlington Avenue, Los Angeles, California 90057 (the "Property"). On May 3, 2006, a Grant

26    Deed was recorded which states that Victor Ritter, as Grantor, conveyed to Debtor, an undivided

27    fifty-five percent (55%) interest as a tenant-in-common to the Property, and to Joseph Kurn, an

28    undivided forty-five percent (45%) interest as a tenant-in-common in the Property. Throughout

1    this Bankruptcy Case, Kurn has waffled on whether his interest was that of a creditor or a co-

2    owner of the Property.  On November 25, 2009, Kurn filed a Proof of Claim clarifying that he is a

3    secured creditor of Debtor.    On December 2, 2009, Kurn filed a disclosure statement and

4    Chapter 11 plan of reorganization treating himself as a third-priority secured creditor.

5    Accordingly, this Plan will treat Kurn as a third-priority secured creditor.

6         The Property is fully leased at market rents and generated gross income of $130,259.96

7    for the year ended December 31, 2008.  After expenses, the Property had net operating income of

8    $33,117.27 for the same period.

9         Debtor recently had the Property appraised as of March 2, 2009 for approximately $1.1

10   million by Tupper W. Lienke, MAI of the Mood Appraisal Group, Inc.  Additionally, Danielle

11   Hoston of Re/Max Commercial issued a Broker's Opinion of Value valuing the Property between

12   $1.2 million and $1.25 million.  Given current market conditions, Debtor believes the fair market

13   value of the Property to be approximately $1,100,000 million

14        There are two conventional loans against the Property secured by deeds of trust containing

15   assignment of rents clauses.  The first loan is in favor of the City of Los Angeles ("City of L.A."),

16   and is a "redevelopment" originated loan and does not bear interest.  The anticipated unpaid

17   principal balance of this loan at the Plan effective date of March 1, 2010 will be $486,476.80.

18   This loan is secured by a first priority Deed of Trust, Assignment of Rents, and Security

19   Agreement (450 South Burlington Avenue Project) dated May 12, 1997 recorded with the Los

20   Angeles County Recorder on June 27, 1997 and bearing instrument number 97962274.  Debtor

21   assumed this loan when it acquired its interest in the Property.

22        The second loan is in favor of Victor Ritter ("Ritter"), the former owner of the Property.

23   This loan is fully matured and bears interest at 3% per annum.  The unpaid principal balance is

24   $205,382.02.  This loan is secured by a second priority Short Form Deed of Trust and Assignment

25   of Rents dated May 3, 2006 recorded with the Los Angeles County Recorder on May 3, 2006 and

26   bearing instrument number 060973966.

27   **B.    Principals/Affiliates of Debtor's Business**

28        Triumvirate Partners, LLC ("Triumvirate") holds 100% of the limited liability company

1   membership interests of Debtor. Brett H. Daniels is the authorized representative of Debtor. The

2   Property is managed by Urban Housing, LLC ("Urban"), an affiliate of Triumvirate.

3   **C.      Management of the Debtor Before and After the Bankruptcy**

4           Mr. Daniels and Urban managed Debtor and the Property, respectively, pre-petition, and

5   have continued to manage Debtor and the Property, respectively, during the pendency of this

6   bankruptcy case. Mr. Daniels and Urban will continue to manage Debtor and the Property,

7   respectively, following Plan confirmation.

8   **D.      Events Leading to Chapter 11 Filing**

9           Debtor commenced the above-captioned bankruptcy case to seek an extension of the time

10  to pay the matured promissory note of Ritter and forestall Ritter's threat to foreclose his interest

11  in the Property.

12  **E.      Significant Events During the Bankruptcy**

13          **1.      Bankruptcy Proceedings**

14          The following is a list of significant events that have occurred during this case:

15          **Case Commencement and Administrative Matters:** On March 10, 2009, Debtor

16  commenced this bankruptcy case by voluntarily filing its Chapter 11 bankruptcy petition. The

17  bankruptcy case was initially assigned to the Honorable Sheri Bluebond, United States

18  Bankruptcy Judge. Judge Bluebond was not available for the initial hearing on Debtor's Motion

19  for Interim and Final Orders Authorizing Use of Cash Collateral [Docket No. 10], and the matter

20  was heard by the Honorable Samuel L. Bufford, United States Bankruptcy Judge. At that

21  hearing, Judge Bufford notified the parties that he would be presiding over the bankruptcy case

22  for all further proceedings. On April 8, 2009, the Court entered its order reassigning the

23  bankruptcy case to Judge Bufford [Docket No. 26]. This order cited an incorrect subparagraph of

24  the Local Bankruptcy Rule authorizing transfers. Kurn vehemently objected to this

25  inconsequential issue. Notwithstanding Kurn's unfounded claims of judicial bias and

26  inappropriate demands for recusal, the Court entered its corrected order *nunc pro tunc* assigning

27  the bankruptcy case from Judge Bluebond to Judge Bufford on June 29, 2009.

28

1    **Cash Collateral Use:**  On March 28, 2009, the Court granted Debtor's initial request for

2    use of cash collateral through April 28, 2009 over the opposition of Kurn.  The Court has granted

3    Debtor's requests for continued use of cash collateral on two subsequent occasions both over the

4    objections of Kurn.   On November 24, 2009, Debtor filed a supplemental motion seeking

5    continued use of cash collateral through June 30, 2010.  The hearing on this most recent cash

6    collateral request is set for December 15, 2009 at 2:00 p.m.

7    **Kurn Seeks Reconsideration of the Second Cash Collateral Hearing:**  On May 7,

8    2009, Kurn filed his Motion for Reconsideration of the Court's April 28, 2009 Cash Collateral

9    Ruling and for Recusal (the "Reconsideration Motion") [Docket No. 48].  Debtor opposed this

10   motion, and on June 2, 2009, the Court denied Kurn's reconsideration motion.  The order was

11   entered on July 2, 2009 [Docket No. 71].  On June 2, 2009, Kurn filed his Notice of Appeal of

12   this Court's decision denying the Reconsideration Motion [Docket No. 57] and elected to have

13   the appeal heard before the U.S. District Court [Docket No. 58].  Realizing that this was an

14   improper interlocutory appeal, Debtor filed a motion to dismiss the appeal on July 10, 2009,

15   which the District Court granted on August 5, 2009.

16   **Employment and Compensation of Professionals:**  On April 27, 2009, the Court

17   entered its Order Authorizing Employment of Buchalter Nemer, PC as General Bankruptcy

18   Counsel to Debtor [Docket No. 16].   The employment application was filed on notice of

19   opportunity for hearing and was not opposed.  On September 16, 2009, Debtor filed its

20   Application for Order Authorizing Employment of Greene, Fidler, Chaplan & Hicks, LLP as

21   Special Litigation Counsel [Docket No. 129].  Kurn objected to the employment of the Greene

22   Fidler law firm, and on October 27, 2009, this Court denied the Greene Fidler Employment

23   Application.   Also, on September 16, 2009, Buchalter Nemer filed its First Interim Fee

24   Application for payment of attorneys' fees and reimbursement of expenses for the period from

25   March 10, 2009 through August 31, 2009 [Docket No. 127] (the "Fee Application").  Kurn filed

26   an objection to Buchalter's Fee Application.  On October 27, 2009, the Court granted Buchalter's

27   Fee Application notwithstanding Kurn's objection.

28

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

**Debtor's First Sanctions Motion Against Kurn:**  On June 23, 2009, Debtor filed its Motion Seeking Sanctions against Kurn and His Counsel Pursuant to Bankruptcy Rule 9011 and 11 U.S.C. § 105 [Docket No. 64]. This motion sought sanctions for the frivolous Reconsideration Motion filed by Kurn. This motion was opposed by Kurn and his counsel. The Court heard this motion on July 14, 2009 and took the matter under submission. On August 6, 2009, the Court entered its order imposing sanctions on Kurn's counsel in the amount of $10,000 [Docket No. 96] (the "Sanctions Order"). Kurn's counsel filed its Notice of Appeal of the Sanctions Order on August 14, 2009 [Docket No. 101] electing to have the appeal heard before the Ninth Circuit's Bankruptcy Appellate Panel. On August 18, 2009, Debtor filed its election to have this appeal heard by the U.S. District Court [Docket No. 106]. This appeal is currently pending before the U.S. District Court.

**Kurn's Frivolous Motion to Withdraw the Bankruptcy Reference and Debtor's Second Sanctions Motion:**  On August 5, 2009, Kurn filed an Emergency Motion with the U.S. District Court seeking to withdraw the bankruptcy reference from this Court. Debtor filed its opposition to this motion on August 7, 2009. Debtor also served Kurn's counsel with a Motion Seeking Sanctions in accordance with the safe-harbor requirements of Bankruptcy Rule 9011. On August 10, 2009, the District Court entered its order denying Kurn's Emergency Motion to Withdraw Reference. On September 16, 2009, Debtor filed its Second Motion Seeking Sanctions against Joseph Kurn and his Counsel [Docket No. 131] for their frivolous Emergency Motion to Withdraw the Bankruptcy Reference (the "Reference Motion"). On October 7, 2009, this Court ruled that it did not have jurisdiction to award sanctions since the Reference Motion was directed to the U.S. District Court. On October 20, 2009, Debtor filed an Ex Parte Motion with the District Court seeking permission to file the sanctions motion related to the Reference Motion therein. That request is still pending before the District Court.

**Kurn's Unfounded Claims of Contempt:**  On April 1, 2009, Kurn filed his Emergency Motion for Examination of Debtor's Person Most Knowledgeable Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure [Docket No. 21]. The court granted this motion on April 9, 2009 [Docket No. 28]. On September 3, 2009, Kurn filed a Motion for Order to Show

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

1    Cause re Contempt against Debtor, its principals and its counsel of record [Docket No. 117] (the

2    "OSC Motion").  Kurn's unfounded basis for the OSC Motion was (i) Debtor's failure to produce

3    a tenant-in-common agreement pursuant to the Rule 2004 Examination, (ii) certain alleged

4    perjurious statements of Debtor's principals, and (iii) the alleged spoliation of evidence.  The

5    respondents to the OSC Motion filed a preliminary opposition on September 8, 2009 [Docket

6    No. 112].  On October 23, 2009, this Court entered its Order Denying Kurn's OSC Motion.

7            **Kurn's State Court Litigation:**  Kurn commenced an action against certain of Debtor's

8    principals in state court.  On September 4, 2009, Debtor's sole-equity owner and certain of

9    Debtor's principals filed a Notice of Removal of the state court action thereby initiating

10   Adversary Proceeding No. 2:09-ap-02082-SB.  On October 2, 2009, Kurn filed a Motion to

11   Remand and Abstain in this Court.  Debtor opposed this motion, and on November 3, 2009, this

12   Court denied Kurn's Motion to Remand.  The Court has not yet entered its order on this matter.

13           **Victor Ritter's Disclosure Statement and Plan:**  On August 12, 2009, Ritter filed his

14   First Amended Chapter 11 Plan [Docket No. 97] and First Amended Disclosure Statement

15   [Docket No. 98].  Ritter's proposed plan of reorganization sought to liquidate Debtor and use the

16   proceeds to satisfy the Ritter promissory note.  Debtor filed its objection to Ritter's First

17   Amended Disclosure Statement on September 18, 2009.  The hearing on Ritter's First Amended

18   Disclosure Statement was continued to November 3, 2009, which was continued yet again to

19   January 12, 2010.   Thereafter, on November 19, 2009, Ritter filed his Second Amended

20   Disclosure Statement and Second Amended Plan of Reorganization, which also seeks liquidation

21   of Debtor's assets.  Ritter's disclosure statement is set for an approval hearing on January 12,

22   2010.  Debtor intends to file an objection to Ritter's Second Amended Disclosure Statement and

23   Second Amended Plan.

24           **Debtor's Disclosure Statement and Plan:**   On September 21, 2009, Debtor filed its

25   Disclosure Statement [Docket No. 138] and Chapter 11 Plan of Reorganization [Docket No. 137].

26   Kurn and Ritter both objected to the adequacy of the Disclosure Statement among other things.

27   The Disclosure Statement hearing has been continued to January 12, 2010.

28

1    **Kurn's Disclosure Statement and Plan:**  On December 2, 2009, Kurn filed his

2    Disclosure Statement of Joseph Kurn Describing Kurn's Proposed Chapter 11 Plan [Docket No.

3    185] and Joseph Kurn's Proposed Chapter 11 Plan [Docket No. 186].  Kurn's proposed plan of

4    reorganization seeks to liquidate Debtor and use the proceeds to satisfy Kurn's claims and the

5    attorneys' fees of his counsel.  Kurn's disclosure statement is set for an approval hearing on

6    January 12, 2010.  Debtor intends to file an objection to Kurn's Disclosure Statement and Plan.

7    **Bar Date for Proofs of Claims and Interests:**  On September 22, 2009, Debtor filed its

8    Motion for Order Setting the Claims Bar Date on notice of opportunity to request a hearing.  No

9    opposition had been filed.  On November 18, 2009, Debtor filed and served its Notice of Last

10   Date to File Proofs of Claims or Interests [Docket No. 171] setting the claim filing deadline as of

11   January 22, 2010.  The Court entered its motion setting the bar date as January 22, 2010 on

12   November 25, 2009.  On November 24, 2009, Kurn filed his Proof of Claim alleging damages in

13   excess of $1.3 million.  Debtor will be filing an objection to Kurn's Proof of Claim in due course.

14   **Pending Adversary Proceedings and Motions:**  Currently, the following significant

15   adversary proceedings and motions are still pending:

16   - The removed state court litigation commenced by Kurn against Debtor's principals
17     and affiliates is pending as Adversary Proceeding No. 2:09-ap-02082-SB.

18   - Ritter's Second Amended Disclosure Statement and Kurn's Disclosure Statement
19     are set for hearing on January 12, 2010 at 2:00 p.m.

20   - The appeal of the Sanctions Order is pending before the U.S. District Court.

21   - The Ex Parte Application to Amended the Order Denying the Motion to Withdraw
22     Reference is pending before the U.S. District Court.

23   **2.    Other Legal Proceedings**

24   In addition to the proceedings discussed above, the Debtor is currently involved in the

25   following nonbankruptcy legal proceedings:  NONE.

26   **3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers**

27   If it is determined that Kurn holds a tenant-in-common interest in the Property, then

28   Debtor holds the following claims against Kurn and will commence an adversary proceeding

1    against Kurn.    Debtor will seek to compel Kurn to pay the remaining balance of the

2    approximately $500,000 that Kurn was required to pay for the acquisition of his forty-five (45%)

3    interest in the Property pursuant to Amendment #1 to Tenant in Common Agreement or reduce

4    Kurn's ownership percentage in accordance with the amount of funds that Kurn actually

5    contributed. Debtor will also seek contribution from Kurn for Kurn's share of the liabilities of the

6    Property arising from his 45% interest as a tenant in common, and damages for construction work

7    that Kurn performed at the Property that did not meet applicable building code requirements.

8         **4.    Procedures Implemented to Resolve Financial Problems**

9         With the exception of the maturity of the Ritter promissory note, Debtor did not have any

10   other significant financial problems prior to the commencement of this bankruptcy case.    Debtor's

11   sole asset, the Property, was operating on a cash flow positive basis since Debtor acquired its

12   interest.    To resolve the issues arising from the maturity of the Ritter promissory note, Debtor and

13   Ritter have negotiated a consensual extension of Debtor's obligations to Ritter and Debtor

14   anticipates that Ritter will vote in favor of the Plan.

15        **5.    Current and Historical Financial Conditions**

16        Debtor's Property generated gross income of $130,259.96 for the 2008 calendar year and

17   $131,039.35 for the 2007 calendar year.    After expenses, the Property generated net operating

18   income of $33,117.27 for 2008 and ($998.80) for 2007.    The net operating loss for 2007 resulted

19   from the significant repairs that the Property required following Debtor's acquisition of the

20   Property.    The Property has been operationally cash flow positive for the 2009 calendar year and

21   during the pendency of this bankruptcy case.

22        The Property is fully leased at market rental rates and Debtor anticipates that the Property

23   will continue to operate on a cash flow positive basis following confirmation of this Plan.    The

24   identity and fair market value of the estate's assets are listed in Exhibit A.    Debtor's unaudited

25   financial statements for 2007 and 2008 prepared by Debtor's management on a cash basis are

26   attached as Exhibit B along with Debtor's pro forma financial statements for 2010 through 2019,

27   which were prepared by Debtor's management on a cash basis.

28

# III.

## SUMMARY OF THE PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, Debtor has not placed the following claims in a class.

### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(2). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's Section 507(a)(2) administrative claims and their treatment under the Plan (see Exhibit F for detailed information about each administrative expense claim):

| Name | Amount Owed | Treatment |
|---|---|---|
| Property Taxes | $0.00 | Taxes have been paid in full in the ordinary course post petition. |
| Professional Fees | $130,000 (est.) | All unpaid professional fees to be paid on or before the Effective Date |
| Clerk's Office Fees | None | All fees have been paid. |
| Office of the U.S. Trustee Fees | $TBD | Paid in full on or before the Effective Date |
| TOTAL: | $130,000 (est.) | |

Court Approval of Fees Required:

The Court must rule on all professional fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan. As indicated above, the Debtor will need to pay at least $130,000.00 of administrative claims by the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. The source of this cash will be operating profits generated by the Property and capital contributions or loans from Debtor's principal.

### 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| NONE | N/A | ☐ Pymt interval | = N/A |
| | | ☐ Pymt amt/interval | = N/A |
| | | ☐ Begin date | = N/A |
| | | ☐ End date | = N/A |
| | | ☐ Interest Rate % | = N/A |
| | | ☐ Total Payout Amount | = N/A |

### C. Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

**Class 1 – Unimpaired:** Claims in this class are deemed to accept the Plan.

| DESCRIPTION | | TREATMENT | |
|---|---|---|---|
| Secured claim of: | | | |
| ☐ Name = | City of Los Angeles | ☐ Pymt interval | = Monthly |
| ☐ Collateral description = | 450 S. Burlington Ave. | ☐ Pymt amt/interval | = $2,278.67 |
| ☐ Collateral value = | $1,100,000 | ☐ Balloon pymt | = $0.00 |
| ☐ Priority of security int. = | First | ☐ Begin date | =4/1/2010 |
| ☐ Principal owed = | $491,034.14 | ☐ End date | =8/1/2027 |
| ☐ Pre-pet. arrearage amount = | $0.00 | ☐ Interest rate % | =0.0% |
| ☐ Post-pet. arrearage amount = | $0.00 | ☐ Total Payout | = $491,034.14 |
| ☐ Total claim amount = | $491,034.14 | ☐ Treatment of Lien | = Retained |
| ☐ Insider = | No | | |
| ☐ Impaired = | No | ☐ Unsec. Deficiency | = $0.00 |

**Class 2 – Impaired:** Claims in this class are entitled to vote on the Plan.

| DESCRIPTION | | TREATMENT | |
|---|---|---|---|
| Secured claim of: | | | |
| ☐ Name = | Victor Ritter | ☐ Pymt interval | = Monthly |
| ☐ Collateral description = | 450 S. Burlington Ave. | ☐ Pymt amt/interval | = $682.33 |
| ☐ Collateral value = | $1,100,000 | ☐ Balloon pymt | = $204,390.22 |
| ☐ Priority of security int. = | Second | ☐ Begin date | = 04/01/2010 |
| ☐ Principal owed = | $200,000 | ☐ End date | = 03/31/2020 |
| ☐ Pre-pet. arrearage amount = | $5,382.02 | ☐ Interest rate % | = 4.0% |
| ☐ Post-pet. arrearage amount = | $0.00 | ☐ Total Payout | = $287,691.96 |
| ☐ Total claim amount = | $205,382.02 | ☐ Treatment of Lien | = Retained |
| ☐ Insider = | No | | |
| ☐ Impaired = | Yes | ☐ Unsec. Deficiency | = $0.00 |

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

**Class 3 – Impaired:** Claims in this class are entitled to vote on the Plan.

| DESCRIPTION | | TREATMENT | |
|---|---|---|---|
| Secured claim of: | | ☐ Pymt interval | = Monthly |
| ☐ Name = | Joseph Kurn | ☐ Pymt amt/interval | = $1,085.00 |
| ☐ Collateral description = | 450 S. Burlington Ave. | ☐ Balloon pymt | = $326,644.63 |
| ☐ Collateral value = | $1,100,000 | | |
| ☐ Priority of security int. = | Third | ☐ Begin date | = 04/01/2010 |
| ☐ Principal owed = | $326,625 | ☐ End date | = 03/31/2020 |
| ☐ Pre-pet. arrearage amount = | $0.00 | | |
| ☐ Post-pet. arrearage amount = | $0.00 | ☐ Interest rate % | = 4.0% |
| ☐ Total claim amount = | $326,625 | ☐ Total Payout | = $456,844.63 |
| ☐ Insider = | No | | |
| ☐ Impaired = | Yes | ☐ Treatment of Lien | = Retained |
| | | ☐ Unsec. Deficiency | = $0.00 |

**Surcharge Against Class 3 Claims:** Debtor believes that it has a valuable cause of action against Kurn based upon Section 506(c) of the Bankruptcy Code, which permits a debtor to recover certain expenses from a secured creditor's collateral. In order to recover, the expenses must be:

1.  Reasonable. The amount of the expenses must be reasonable for the goods or services provided.

2.  Necessary. The expenses must be necessary to preserve or dispose of the secured creditor's collateral.

3.  Beneficial. The expenses must confer a benefit on the secured creditor.

Since Debtor believes it indisputable that the value of the Property has increased during the course of this bankruptcy case as a result of expenditures associated with repair and maintenance of the Property and related fees associated with Debtor's bankruptcy case, Debtor intends to pursue an action against Kurn to determine the appropriate amount to surcharge Kurn for such costs and to reduce his Class 3 claim by the corresponding amount.

**Equitable Subordination of Class 3 Claims:** Debtor asserts that the circumstances surrounding Kurn's actions during the pendency of this Bankruptcy Case give rise to a claim for equitable subordination. Section 510(c) of the Bankruptcy Code provides for the subordination of

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

1    an allowed claim or interest based upon the principles of equitable subordination.  A person

2    seeking to equitably subordinate a claim under 11 U.S.C. §510(c) has the burden of proving:

3    "(1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct

4    injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would

5    not be inconsistent with the Bankruptcy Code." *In re Lazar*, 83 F.3d 306, 309 (9th Cir. 1996).

6    The Plan provides for a subordinate class (Class 5) for the Kurn's claim based upon his

7    inequitable conduct and consistent with the principles of equitable subordination, if so determined

8    by the Court.

9           **2.    Classes of Priority Unsecured Claims**

10          Certain priority claims that are referred to in Section 507(a)(3), (4), (5), (6), and (7) of the

11    Bankruptcy Code are required to be placed in classes. These types of claims are entitled to

12    priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim

13    receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class

14    of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of

15    the Effective Date, equal to the allowed amount of such claims.

16          The following chart lists all classes containing Debtor's Section 507(a)(3), (a)(4), (a)(5),

17    (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see Exhibit G for

18    more detailed information about each priority unsecured claim):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| NONE | N/A | N/A | N/A |

**3.    Class of General Unsecured Claims**

       General unsecured claims are unsecured claims not entitled to priority under Bankruptcy

Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing

all of Debtor's general unsecured claims (see Exhibit H for detailed information about each

general unsecured claim):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|

| 4 | General unsecured claims<br><br>☐ Total amt of claims =<br><br>$32,763.07 plus<br>disputed $989,625 claim. | **YES**<br>Claims in this class are entitled to vote on the Plan. | ☐ Pymt interval<br>☐ Pymt amt/interval<br>☐ Begin date<br>☐ End date<br>☐ Interest rate %<br>☐ Total payout    50% | = Quarterly<br>= $425.00<br>= 4/1/2010<br>= 1/1/2020<br>= 0.26%<br>= $16,584.72 |

The unsecured portion of Kurn's Proof of Claim is approximately $989,625, which amount is disputed by Debtor. Debtor believes this claim to be frivolous and duplicative of the secured claim asserted by Kurn and treated in Class 3 herein. Accordingly, Debtor intends to file an objection to Kurn's Proof of Claim in due course. Furthermore, to the extent that Kurn's alleged unsecured claim of $989,625 is allowed (or any portion thereof), Debtor will seek to equitably subordinate that claim based on the vexatious conduct of Kurn throughout the pendancy of this Bankruptcy Case.

**4.    Class of Equitably Subordinated Claims**

Equitably subordinated claims that would have been treated either in one of the secured classes or the unsecured class but for the inequitable conduct of the claimant justifying subordination of its claim pursuant to Section 510(c) of the Bankruptcy Code. The following chart identifies this Plan's treatment of the class containing Kurn's equitably subordinated claims if the Court grants such subordination:

| CLASS# | DESCRIPTION | IMPAIRED<br>(Y/N) | TREATMENT | |
|--------|-------------|-------------------|-----------|---|
| 5 | General unsecured claims<br><br>☐ Total amt of claims =<br><br>$1,316,250 | **YES**<br>Claims in this class are entitled to vote on the Plan. | ☐ Pymt interval<br>☐ Pymt amt/interval<br>☐ Begin date<br>☐ End date<br>☐ Interest rate %<br>☐ Total payout    3% | = Quarterly<br>= $1000.00<br>= 4/1/2010<br>= 1/1/2020<br>= 0.26%<br>= $39,989.77 |

**5.    Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Plan's treatment of the class of interest holders (see Exhibit I for more detailed information about each interest holder):

| CLASS # | DESCRIPTION | IMPAIRED | TREATMENT |
|---------|-------------|----------|-----------|
| 6 | Interest holders | YES. | Triumvirate will acquire 100% of the equity interests of Reorganized Debtor by virtue of Triumvirate's new value contribution. |

**D.    Means of Effectuating the Plan**

**1.    Funding for the Plan**

The Plan will be funded through post-confirmation operating cash flow generated by the Property and capital contributions or loans by Triumvirate Partners, LLC or other affiliated entities, as necessary, in amounts sufficient to fund Plan payments.

**2.    Post-confirmation Management**

Triumvirate Partners, LLC will be Reorganized Debtor's sole interest holder, and Brett H. Daniels will become Reorganized Debtor's manager.

**3.    Disbursing Agent**

Urban shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**E.    Risk Factors**

The proposed Plan has the following risks:  Financial projections provided by Debtor may not be realized thereby resulting in the inability to pay Plan payments.  Deterioration of the real estate market may affect Property rental income and negatively impact Debtor's ability to pay Plan payments.  If Debtor defaults on Plan payments to the secured creditors, such secured creditors may foreclose on their interests.

**F.    Other Provisions of the Plan**

**1.    Executory Contracts and Unexpired Leases**

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

####     a.     Assumptions

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan (see Exhibit C for more detailed information on unexpired leases to be assumed and Exhibit D for more detailed information on executory contracts to be assumed):

- All real property leases for the Property as set forth in Exhibit C hereto.
- Property Management Agreement with Urban Housing, LLC
- Office Equipment Lease with Marathon Services, Inc.

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of this document for the specific date.

####     b.     Rejections

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

- Amendment #1 to Tenant in Common Agreement with Joseph Kurn.

The Amendment #1 to Tenant in Common Agreement provides Debtor with an option to redeem Kurn's 45% tenant-in-common interest in the Property at the par value of Kurn's current investment. The Amendment #1 also provides Kurn with an option to require Debtor to redeem Kurn's 45% tenant-in-common interest in the Property at the par value of Kurn's current investment. Debtor's rejection of this bilateral option agreement will leave Kurn with a 45% tenant-in-common interest, subject to any avoidance or other actions that Debtor may pursue against Kurn. The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

1    deadline for objecting to the confirmation of the Plan.  See Section I.B.3. of this document for the

2    specific date.

3    THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

4    ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS 30 DAYS AFTER THE

5    DATE OF CONFIRMATION OF THE PLAN.  Any claim based on the rejection of a contract or

6    lease will be barred if the proof of claim is not timely filed, unless the Court later orders

7    otherwise.

8    **2.    Changes in Rates Subject to Regulatory Commission Approval**

9    This Debtor is not subject to governmental regulatory commission approval of its rates.

10   **3.    Retention of Jurisdiction.**

11   The Court will retain jurisdiction to the extent provided by law.

12   **G.    Tax Consequences of Plan**

13   CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

14   MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

15   ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible

16   tax consequences is intended solely for the purpose of alerting readers about possible tax issues

17   this Plan may present to the Debtor.  Debtor CANNOT and DOES NOT represent that the tax

18   consequences contained below are the only tax consequences of the Plan because the Tax Code

19   embodies many complicated rules which make it difficult to state completely and accurately all

20   the tax implications of any action.

21   The following are the tax consequences which the Plan will have on the Debtor's tax

22   liability:  If Debtor sells the Property post-confirmation, then Debtor may incur capital gains on

23   the sale which may increase Debtor's tax liability.  If Debtor negotiates debt reductions with its

24   secured lenders post-confirmation, then Debtor may incur cancellation of indebtedness income

25   that may increase Debtor's tax liability thereby impacting Debtor's ability to make Plan

26   payments.

27

28

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

### A.     Who May Vote or Object

#### 1.     Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

#### 2.     Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

##### a.     What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court,

1  after notice and hearing, either overrules the objection or allows the claim or interest for voting

2  purposes.

3       THE COURT HAS SET JANUARY 22, 2010 AS THE DATE FOR FILING A PROOF

4  OF CLAIM OR PROOF OF INTEREST IN THIS CASE.  A creditor or interest holder may have

5  an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is

6  deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled

7  as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An

8  interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

9  Consult Exhibits F through L to see how Debtor has characterized your claim or interest.

10       **b.**     **What Is an Impaired Claim/Interest**

11       As noted above, an allowed claim or interest only has the right to vote if it is in a class

12  that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or

13  contractual rights of the members of that class.  For example, a class comprised of general

14  unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they

15  are owed.

16       In this case, Debtor believes that classes 2 and 3 are impaired and that holders of claims in

17  each of these classes are therefore entitled to vote to accept or reject the Plan.  Debtor believes

18  that classes 1 and 4 are unimpaired and that holders of claims in each of these classes therefore do

19  not have the right to vote to accept or reject the Plan.  Parties who dispute Debtor's

20  characterization of their claim or interest as being impaired or unimpaired may file an objection to

21  the Plan contending that Debtor has incorrectly characterized the class.

22       **3.**     **Who is <u>Not</u> Entitled to Vote**

23       The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been

24  disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Section

25  507(a)(1), (a)(2), and (a)(8) of the Bankruptcy Code; and (4) claims in classes that do not receive

26  or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because

27  such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to

28  Bankruptcy Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims

1   are not placed in classes and they are required to receive certain treatment specified by the Code.

2   Claims in classes that do not receive or retain any value under the Plan do not vote because such

3   classes are deemed to have rejected the Plan.   EVEN IF YOUR CLAIM IS OF THE TYPE

4   DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE

5   CONFIRMATION OF THE PLAN.

6         **4.**    **Who Can Vote in More Than One Class**

7       A creditor whose claim has been allowed in part as a secured claim and in part as an

8   unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

9   the secured part of the claim and another ballot for the unsecured claim.

10        **5.**    **Votes Necessary to Confirm the Plan**

11       If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

12   impaired class has accepted the Plan without counting the votes of any insiders within that class,

13   and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be

14   confirmed by "cramdown" on non-accepting classes, as discussed later in Section IV.A.8.

15        **6.**    **Votes Necessary for a Class to Accept the Plan**

16       A class of claims is considered to have accepted the Plan when more than one-half (1/2) in

17   number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in

18   favor of the Plan.   A class of interests is considered to have accepted the Plan when at least two-

19   thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept

20   the Plan.

21        **7.**    **Treatment of Nonaccepting Classes**

22       As noted above, even if all impaired classes do not accept the proposed Plan, the Court

23   may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required

24   by the Code.   The process by which nonaccepting classes are forced to be bound by the terms of

25   the Plan is commonly referred to as "cramdown."   The Code allows the Plan to be "crammed

26   down" on nonaccepting classes of claims or interests if it meets all consensual requirements

27   except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and

28   is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred

1    to in 11 U.S.C. § 1129(b) and applicable case law.

2         **8.     Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

3         The party proposing this Plan will ask the Court to confirm this Plan by cramdown on

4    impaired classes 2, 3, 4 or 5 if any of these classes do not vote to accept the Plan.

5    **B.     Liquidation Analysis**

6         Another confirmation requirement is the "Best Interest Test", which requires a liquidation

7    analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and

8    that claimant or interest holder does not vote to accept the Plan, then that claimant or interest

9    holder must receive or retain under the Plan property of a value not less than the amount that such

10   holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy

11   Code.

12        In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured

13   creditors are paid first from the sales proceeds of properties on which the secured creditor has a

14   lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining

15   sales proceeds, according to their rights to priority. Unsecured creditors with the same priority

16   share in proportion to the amount of their allowed claim in relationship to the amount of total

17   allowed unsecured claims. Finally, interest holders receive the balance that remains after all

18   creditors are paid, if any.

19        For the Court to be able to confirm this Plan, the Court must find that all creditors and

20   interest holders who do not accept the Plan will receive at least as much under the Plan as such

21   holders would receive under a Chapter 7 liquidation. Debtor maintains that this requirement is

22   met here for the following reasons: The fair market value of Debtor's assets are less than the

23   amount of the secured claims. Moreover, a forced liquidation or orderly liquidation will yield

24   significantly less than the stated fair market value of Debtor's assets. Additionally, in a chapter 7

25   case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount

26   not to exceed 25% of the first $5,000 of all moneys disbursed, 10% on any amount over $5,000

27   but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on

28   all amounts over $1 million. In this case, the trustee's compensation is estimated to equal

1    $49,160.

2         Below is a demonstration, in balance sheet format, that all creditors and interest holders

3    will receive at least as much under the Plan as such creditor or interest holder would receive

4    under a Chapter 7 liquidation.  *See* Exhibit E for a schedule of how the following assets are

5    valued. This information is provided by Debtor.

**ASSETS VALUE AT LIQUIDATION VALUES:**

6

CURRENT ASSETS

7    a.   Cash on hand                                           $2,000
     b.   Accounts receivable (Urban Housing Note)              $23,000
8    c.   Inventories                                            $0

9         TOTAL CURRENT ASSETS                                  $25,000

10   FIXED ASSETS
     a.   Office furniture & equipment                       $1,400.00
11   b.   Machinery & equipment                                  $0
     c.   Automobiles                                            $0
12   d.   Building & Land (Debtor's 55% TIC interest in the Property)[1]  $1,100,000

13        TOTAL FIXED ASSETS                                 $1,101,400

14   OTHER ASSETS
     a.   Customer list                                          $
15   b.   Other intangibles                                      $

16        TOTAL OTHER ASSETS                                     $

17   **TOTAL ASSETS AT LIQUIDATION VALUE**                  **$1,126,400**
                                                            =========
18   **Less:**
     Secured creditor's recovery[2]                       ($1,030,000)
19   **Less:**
     Chapter 7 trustee fees and expenses                    ($54,542)
20   **Less:**
     Chapter 11 administrative expenses                    ($130,000)
21   **Less:**
     Priority claims,                                         $0.00
22   excluding administrative expense claims
     **Less:**
23   Debtor's claimed exemptions                             $0.00
                                                            =========
24   (1) Balance for unsecured claims                       ($88,142)

25   (2) Total amt of unsecured claims                     $32,763.07

26   _____

27   [1]  In Debtor's experience, distressed real property sales of similar properties typically sell for approximately 30% of the fair market value.  The fair market value of Debtor's Property is $1,100,000.  Even at the exaggerated fair market value it is clear that unsecured creditors would not receive any distribution in a Chapter 7 liquidation.
28   [2]  Secured creditor's recovery includes post-petition interest and fees.

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 0%_**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:      = 50%**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims | N/A% | N/A% |
| Class 1 – Secured (First Priority) | 100% | 100% |
| Class 2 – Secured (Second Priority) | 100% | 100% |
| Class 3 – Secured (Third Priority) | 100% (if allowed) | 100% (if allowed) |
| Class 4 – Unsecured | 50% | 0% |
| Class 5 – Equitable Subordination | 3% (if class approved) | 0% |

## C.    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  Debtor maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date                              $150,000 (est.)

**To Pay:** Administrative claims                                                     $130,000 (est.)

**To Pay:** Statutory costs & charges                                             $1,000 (est.)

**To Pay:** Other Plan Payments due on Effective Date                   $4,000 (est.)

Balance after paying these amounts...............                                $15,000

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | | |
|---|---|---|
| $2,000 (est.) | Cash in DIP Account | |
| +$8,000 (est.) | Additional cash DIP will accumulate from net earnings between now and Effective Date | |
| +_____ | Borrowing | |
| +$140,000 (est.) | New Value Contribution of Triumvirate to Reorganized Debtor | |
| +_____ | Other | |
| =$150,000 (est.) | **Total** | |

The second aspect considers whether Debtor will have enough cash over the life of the Plan to make the required Plan payments.

Debtor has provided financial statements which include both historical and projected financial information. Please refer to Exhibit B for the relevant financial statements. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay Class 1 Secured Claims $2,278.67 monthly, Class 2 Secured Claims $682.33 monthly, Class 3 Secured Claims $1,079.74, and Class 4 unsecured claims $988.00 quarterly. As Debtor's financial projections demonstrate, Debtor will generate sufficient cash flow to pay these plan payments for the life of the Plan. The final Plan payment is expected to be paid on March 31, 2020. Debtor contends that Debtor's financial projections are feasible.

## V.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

This Plan provides that upon confirmation of the Plan, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in

1    11 U.S.C. § 1141. However, the discharge will not discharge any liability imposed by the Plan.

2    **B.    Revesting of Property in the Debtor**

3    Except as provided in Section V.E., and except as provided elsewhere in the Plan, the

4    confirmation of the Plan revests all of the property of the estate in the Debtor.

5    **C.    Modification of Plan**

6    Debtor may modify the Plan at any time before confirmation.  However, the Court may

7    require a new disclosure statement and/or revoting on the Plan.  Debtor may also seek to modify

8    the Plan at any time after confirmation only if (1) the Plan has not been substantially

9    consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

10    **D.    Post-Confirmation Status Report**

11    Within 120 days of the entry of the order confirming the Plan, Debtor shall file a status

12    report with the Court explaining what progress has been made toward consummation of the

13    confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

14    unsecured creditors, and those parties who have requested special notice. Further status reports

15    shall be filed every 120 days and served on the same entities.

16    **E.    Quarterly Fees**

17    Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid

18    to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing

19    under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in

20    accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of

21    dismissal or conversion to chapter 7.

22    **F.    Post-Confirmation Conversion/Dismissal**

23    A creditor or party in interest may bring a motion to convert or dismiss the case under

24    § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court

25    orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been

26    property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest

27    in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but

28    only to the extent that relief from stay was not previously authorized by the Court during this

1   case.

2       The order confirming the Plan may also be revoked under very limited circumstances. The

3 Court may revoke the order if the order of confirmation was procured by fraud and if the party in

4 interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

5 the order of confirmation.

6 **G.**    **Final Decree**

7       Once the estate has been fully administered as referred to in Bankruptcy Rule 3022,

8 Debtor, or other party as the Court shall designate in the Plan Confirmation Order, shall file a

9 motion with the Court to obtain a final decree to close the case.

10

11 Date: December 7, 2010

12              450 S Burlington Partners, LLC - Debtor
             Name and Identity of Plan Proponent

13

14

15              */s/ Steven M. Spector, Esq.*     Signature of Attorney for Plan Proponent

16              Steven M. Spector, Esq.         Name of Attorney for Plan Proponent

17              Buchalter Nemer, PC           Name of Law Firm for Plan Proponent

18

19

20

21

22

23

24

25

26

27

28

## VI.

## SUPPORTING DECLARATIONS

I, Brett H. Daniels, declare under penalty of perjury under the laws of the United States of America, that the following statements are true and based upon personal knowledge.

1.     I am the authorized representative of 450 S Burlington Partners, LLC (the "Debtor"). Debtor is a limited liability company formed under the laws of the State of California. I am authorized to submit on Debtor's behalf this Declaration in support of the Debtor's Disclosure Statement Describing Debtor's Chapter 11 Plan of Reorganization.

2.     Buchalter Nemer, PC, is the general bankruptcy counsel of Debtor.  Steven M. Spector and Anthony J. Napolitano are the individuals who prepared this document.  The source of all financial data is Debtor's books and records and my analysis of the same as well as my analysis of the current real estate market in which Debtor operates.

3.     All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.  Debtor recently had the Property appraised as of March 2, 2009 for approximately $1.1 million by Tupper W. Lienke, MAI of the Mood Appraisal Group, Inc. Additionally, Danielle Hoston of Re/Max Commercial issued a Broker's Opinion of Value valuing the Property between $1.2 million and $1.25 million.  Given current market conditions, I estimate that the fair market value for the Property is approximately $1,100,000.  In my experience, distressed real property sales of similar properties typically sell for approximately 30% of the fair market value.

Executed this 7th day of December, 2009 at Santa Monica, California.

BRETT H. DANIELS

## EXHIBIT A - LIST OF ALL ASSETS

1.  Fee simple interest in 450 S. Burlington Avenue, Los Angeles, California

    FMV – Appx. $1,100,000 based on the appraisal and broker's opinion of value.

2.  Claims against Joseph Kurn estimated at $200,000.

3.  $23,000 Note Receivable from Urban Housing, LLC.

4.  $2,000 (est.) cash on hand.

5.  $1,400 (est.) for office and property maintenance equipment.

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

## EXHIBIT B - FINANCIAL STATEMENTS

The following financial statements are supplied by Debtor:

B1.    Income statements presented on a quarterly basis through March 31, 2020, prepared by Debtor's management on a cash basis.

B2.    Unaudited income statements of the two year period preceding the bankruptcy case, prepared by Debtor's management on a cash basis.

B3.    Appraisal of the Property.

B4.    Broker's Opinion of Value of the Property.

**DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

In re 450 S Burlington Partners, LLC, Case No. 2:09-bk-15319-SB

10 Year Financial Projections

| | 1st Quarter 2010 | 2nd Quarter 2010 | 3rd Quarter 2010 | 4th Quarter 2010 | 2010 | 1st Quarter 2011 | 2nd Quarter 2011 | 3rd Quarter 2011 | 4th Quarter 2011 | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | |
| RENT REVENUE | | | | | | | | | | |
| Base Rent | $38,004 | $38,004 | $38,004 | $38,004 | $152,016 | $39,144 | $39,144 | $39,144 | $39,144 | $156,576 |
| Less: Employee Unit | ($1,474) | ($1,474) | ($1,474) | ($1,474) | ($5,896) | ($1,518) | ($1,518) | ($1,518) | ($1,518) | ($6,073) |
| Less: Vacancy | ($3,800) | ($3,800) | ($3,800) | ($3,800) | ($15,202) | ($3,523) | ($3,523) | ($3,523) | ($3,523) | ($14,092) |
| NET RENT REVENUE | $32,730 | $32,730 | $32,730 | $32,730 | $130,919 | $34,103 | $34,103 | $34,103 | $34,103 | $136,412 |
| OTHER INCOME | | | | | | | | | | |
| Laundry Income | $300 | $300 | $300 | $300 | $1,200 | $300 | $300 | $300 | $300 | $1,200 |
| RSO Fee | $40 | $40 | $40 | $40 | $159 | $40 | $40 | $40 | $40 | $159 |
| Scep fee | $151 | $151 | $151 | $151 | $604 | $151 | $151 | $151 | $151 | $604 |
| Total Other Income | $491 | $491 | $491 | $491 | $1,963 | $491 | $491 | $491 | $491 | $1,963 |
| TOTAL INCOME | $33,220 | $33,220 | $33,220 | $33,220 | $132,881 | $34,594 | $34,594 | $34,594 | $34,594 | $138,375 |
| EXPENSES | | | | | | | | | | |
| Salary Expenses | | | | | | | | | | |
| Salary - Manager | $945 | $945 | $945 | $945 | $3,780 | $992 | $992 | $992 | $992 | $3,969 |
| Workers Comp Insurance | $47 | $47 | $47 | $47 | $189 | $48 | $48 | $48 | $48 | $193 |
| Payroll Taxes | $126 | $126 | $126 | $126 | $505 | $132 | $132 | $132 | $132 | $530 |
| Total Employee Benefits | $1,118 | $1,118 | $1,118 | $1,118 | $4,474 | $1,173 | $1,173 | $1,173 | $1,173 | $4,692 |
| General & Administrative | | | | | | | | | | |
| Bank Service Charges | $90 | $75 | $75 | $75 | $315 | $75 | $75 | $75 | $75 | $300 |
| Bookkeeping/Accounting Fees | $0 | $400 | $0 | $0 | $400 | $420 | $0 | $0 | $0 | $420 |
| DOJ Fees | $650 | $0 | $0 | $0 | $650 | $0 | $0 | $0 | $0 | $0 |
| Legal Fees | $250 | $250 | $250 | $250 | $1,000 | $250 | $250 | $250 | $250 | $1,000 |
| Miscellaneous Expense | $63 | $63 | $63 | $63 | $250 | $65 | $65 | $65 | $65 | $260 |
| Operating Supplies | $169 | $169 | $169 | $169 | $675 | $173 | $173 | $173 | $173 | $690 |
| Pest Control | $525 | $525 | $525 | $525 | $2,100 | $541 | $541 | $541 | $541 | $2,163 |
| Equipment Lease Fee | $825 | $0 | $0 | $0 | $825 | $0 | $0 | $0 | $0 | $0 |
| Rent Stabilization Ordinance Fee | $318 | $0 | $0 | $0 | $318 | $318 | $0 | $0 | $0 | $318 |
| Systematic Code Enforcement Program | $604 | $0 | $0 | $0 | $604 | $604 | $0 | $0 | $0 | $604 |
| Telephone | $195 | $195 | $195 | $195 | $780 | $201 | $201 | $201 | $201 | $803 |
| Professional Fees | | | | | | | | | | |
| Third Party Management Fee | $1,636 | $1,636 | $1,636 | $1,636 | $6,546 | $1,705 | $1,705 | $1,705 | $1,705 | $6,821 |
| Total General & Administrative | $5,325 | $3,313 | $2,913 | $2,913 | $14,463 | $3,931 | $3,429 | $3,009 | $3,009 | $13,379 |
| Tax Expense | | | | | | | | | | |
| Taxes - Business | $203 | $203 | $203 | $0 | $203 | $209 | $209 | $0 | $0 | $209 |
| Taxes-LC | $0 | $800 | $0 | $0 | $800 | $800 | $800 | $0 | $0 | $800 |
| Taxes - Property (Reserve Acct.) | $0 | $6,818 | $6,818 | $6,818 | $13,636 | $6,954 | $6,954 | $6,954 | $6,954 | $13,909 |
| Total Tax Expense | $0 | $7,821 | $0 | $6,818 | $14,640 | $7,964 | $7,964 | $0 | $6,954 | $14,918 |
| Utilities | | | | | | | | | | |
| Utilities - Electricity* | $722 | $722 | $722 | $722 | $2,889 | $758 | $758 | $758 | $758 | $3,034 |
| Utilities - Gas | $1,777 | $1,481 | $888 | $1,777 | $5,922 | $1,830 | $1,525 | $915 | $1,830 | $6,100 |
| Utilities - Water & Sewer* | $2,967 | $2,967 | $2,967 | $2,967 | $11,868 | $3,056 | $3,056 | $3,056 | $3,056 | $12,224 |
| Trash Service | $745 | $745 | $745 | $745 | $2,980 | $752 | $752 | $752 | $752 | $3,009 |
| Total Utilities | $6,211 | $5,915 | $5,323 | $6,211 | $23,659 | $6,397 | $6,092 | $5,482 | $6,397 | $24,367 |

Exhibit B1

Exhibit B1, Page 000033

In re 450 S Burlington Partners, LLC, Case No. 2:09-bk-15319-SB

10 Year Financial Projections

| | 1st Quarter 2010 | 2nd Quarter 2010 | 3rd Quarter 2010 | 4th Quarter 2010 | 2010 | 1st Quarter 2011 | 2nd Quarter 2011 | 3rd Quarter 2011 | 4th Quarter 2011 | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|
| Insurance Expense | | | | | | | | | | |
| Insurance - Property | $0 | $8,867 | $0 | $0 | $8,867 | $0 | $9,044 | $0 | $0 | $9,044 |
| Total Insurance Expenses | $0 | $8,867 | $0 | $0 | $8,867 | $0 | $9,044 | $0 | $0 | $9,044 |
| Repairs & Maintenance | | | | | | | | | | |
| Appliance Repair | $172 | $172 | $172 | $172 | $688 | $172 | $172 | $172 | $172 | $688 |
| Carpet Cleaning | $60 | $60 | $60 | $60 | $240 | $60 | $60 | $60 | $60 | $240 |
| Electrical Repair | $63 | $63 | $63 | $63 | $250 | $63 | $63 | $63 | $63 | $250 |
| Fire System Servicing & Repair | $150 | $150 | $150 | $150 | $600 | $125 | $125 | $125 | $125 | $500 |
| Locksmith | $50 | $50 | $50 | $50 | $200 | $50 | $50 | $50 | $50 | $200 |
| Landscaping Labor/Gardener | $195 | $195 | $195 | $195 | $780 | $200 | $200 | $200 | $200 | $800 |
| Painting | $500 | $500 | $500 | $500 | $2,000 | $510 | $510 | $510 | $510 | $2,040 |
| Plumbing | $600 | $600 | $600 | $600 | $2,400 | $660 | $660 | $660 | $660 | $2,640 |
| Repair & Maintenance | $1,620 | $1,620 | $1,620 | $1,620 | $6,480 | $1,669 | $1,669 | $1,669 | $1,669 | $6,674 |
| Total Repairs & Maintenance | $3,410 | $3,410 | $3,410 | $3,410 | $13,638 | $3,508 | $3,508 | $3,508 | $3,508 | $14,032 |
| Total Operating Expenses | $16,064 | $30,444 | $12,763 | $20,470 | $79,740 | $15,009 | $31,210 | $13,172 | $21,042 | $80,433 |
| Net Operating Income | $17,157 | $2,776 | $20,457 | $12,751 | $53,141 | $19,585 | $3,383 | $21,422 | $13,552 | $57,942 |
| | | | | | | | | | | |
| Capital Expenses & Reserves | $1,800 | $1,800 | $1,800 | $1,800 | $7,200 | $1,800 | $1,800 | $1,800 | $1,800 | $7,200 |
| Earnings Before Interest & Taxes (EBIT) | $15,357 | $976 | $18,657 | $10,951 | $45,941 | $17,785 | $1,583 | $19,622 | $11,752 | $50,742 |
| Reorganization Plan Payments | | | | | | | | | | |
| 1st TD - City of Los Angeles | $6,836 | $6,836 | $6,836 | $6,836 | $27,344 | $6,836 | $6,836 | $6,836 | $6,836 | $27,344 |
| 2nd TD - Victor Ritter (Rev. $206K, 4%, i-only) | $1,500 | $2,047 | $2,047 | $2,047 | $7,641 | $2,047 | $2,047 | $2,047 | $2,047 | $8,188 |
| 3rd TD - Joseph Kum (Rev. $325K, 4%, i-only) | $0 | $3,255 | $3,255 | $3,255 | $9,765 | $3,255 | $3,255 | $3,255 | $3,255 | $13,020 |
| Unsecured Creditor Payments | $0 | $425 | $425 | $425 | $1,275 | $425 | $425 | $425 | $425 | $1,700 |
| | | | | | | | | | | |
| Earnings Before Taxes (EBT) | $7,021 | ($11,587) | $6,094 | ($1,612) | ($84) | $5,222 | ($10,980) | $7,059 | ($811) | $2,190 |
| | | | | | | | | | | |
| Member Contributions to Cover Any Shortfall | $0 | $3,300 | $0 | $750 | $4,050 | $0 | $3,000 | $0 | $203 | $3,203 |
| | | | | | | | | | | |
| Cash Balance Beginning | $11,375 | $18,396 | $10,109 | $16,204 | $11,375 | $15,341 | $20,563 | $12,583 | $19,642 | $15,341 |
| Add / (Less) EBT | $7,021 | ($11,587) | $6,094 | ($1,612) | ($84) | $5,222 | ($10,980) | $7,059 | ($811) | $490 |
| Add Member Contributions | $0 | $3,300 | $0 | $750 | $4,050 | $0 | $3,000 | $0 | $203 | $3,203 |
| Ending Bank Balance | $18,396 | $10,109 | $16,204 | $15,341 | $15,341 | $20,563 | $12,583 | $19,642 | $19,034 | $19,034 |

* Calculated Monthly Figure
However, the bill is paid every other month.

2 of 12

Exhibit B1

Exhibit B1, Page 000034

In re 450 S Burlington Partners, LLC, Case No. 2:09-bk-15319-SB

**10 Year Financial Projections**

| | 1st Quarter 2012 | 2nd Quarter 2012 | 3rd Quarter 2012 | 4th Quarter 2012 | 2012 | 1st Quarter 2013 | 2nd Quarter 2013 | 3rd Quarter 2013 | 4th Quarter 2013 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|
| **\*\*INCOME\*\*** | | | | | | | | | | |
| RENT REVENUE | | | | | | | | | | |
| Base Rent | $40,318 | $40,318 | $40,318 | $40,318 | $161,274 | $41,528 | $41,528 | $41,528 | $41,528 | $166,112 |
| Less: Employee Unit | ($1,564) | ($1,564) | ($1,564) | ($1,564) | ($6,255) | ($1,611) | ($1,611) | ($1,611) | ($1,611) | ($6,442) |
| Less: Vacancy | ($3,225) | ($3,225) | ($3,225) | ($3,225) | ($12,902) | ($2,907) | ($2,907) | ($2,907) | ($2,907) | ($11,628) |
| NET RENT REVENUE | $35,529 | $35,529 | $35,529 | $35,529 | $142,117 | $37,010 | $37,010 | $37,010 | $37,010 | $148,042 |
| OTHER INCOME | | | | | | | | | | |
| Laundry Income | $300 | $300 | $300 | $300 | $1,200 | $300 | $300 | $300 | $300 | $1,200 |
| RSO Fee | $40 | $40 | $40 | $40 | $159 | $40 | $40 | $40 | $40 | $159 |
| Scep fee | $151 | $151 | $151 | $151 | $604 | $151 | $151 | $151 | $151 | $604 |
| Total Other Income | $491 | $491 | $491 | $491 | $1,963 | $491 | $491 | $491 | $491 | $1,963 |
| **TOTAL INCOME** | $36,020 | $36,020 | $36,020 | $36,020 | $144,080 | $37,501 | $37,501 | $37,501 | $37,501 | $150,005 |
| **EXPENSES** | | | | | | | | | | |
| Salary Expenses | | | | | | | | | | |
| Salary - Manager | $1,042 | $1,042 | $1,042 | $1,042 | $4,167 | $1,094 | $1,094 | $1,094 | $1,094 | $4,376 |
| Workers Comp Insurance | $49 | $49 | $49 | $49 | $197 | $50 | $50 | $50 | $50 | $201 |
| Payroll Taxes | $139 | $139 | $139 | $139 | $556 | $132 | $132 | $132 | $132 | $529 |
| Total Employee Benefits | $1,230 | $1,230 | $1,230 | $1,230 | $4,920 | $1,276 | $1,276 | $1,276 | $1,276 | $5,105 |
| General & Administrative | | | | | | | | | | |
| Bank Service Charges | $75 | $75 | $75 | $75 | $300 | $75 | $75 | $75 | $75 | $300 |
| Bookkeeping/Accounting Fees | $0 | $440 | $0 | $0 | $440 | $0 | $460 | $0 | $0 | $460 |
| DOJ Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Legal Fees | $250 | $250 | $250 | $250 | $1,000 | $250 | $250 | $250 | $250 | $1,000 |
| Miscellaneous Expense | $68 | $68 | $68 | $68 | $270 | $70 | $70 | $70 | $70 | $280 |
| Operating Supplies | $176 | $176 | $176 | $176 | $705 | $180 | $180 | $180 | $180 | $720 |
| Pest Control | $557 | $557 | $557 | $557 | $2,228 | $574 | $574 | $574 | $574 | $2,295 |
| Equipment Lease Fee | $0 | $0 | $0 | $0 | $0 | $318 | $0 | $0 | $0 | $0 |
| Rent Stabilization Ordinance Fee | $318 | $0 | $0 | $0 | $318 | $604 | $0 | $0 | $0 | $318 |
| Systematic Code Enforcement Program | $604 | $0 | $0 | $0 | $604 | $213 | $0 | $0 | $0 | $604 |
| Telephone | $207 | $207 | $207 | $207 | $828 | $0 | $213 | $213 | $213 | $852 |
| Professional Fees | $0 | $0 | $0 | $0 | $0 | $1,851 | $0 | $0 | $0 | $0 |
| Third Party Management Fee | $1,776 | $1,776 | $1,776 | $1,776 | $7,106 | $1,851 | $1,851 | $1,851 | $1,851 | $7,402 |
| Total General & Administrative | $4,031 | $3,549 | $3,109 | $3,109 | $13,798 | $4,134 | $3,672 | $3,212 | $3,212 | $14,231 |
| Tax Expense | | | | | | | | | | |
| Taxes - Business | $0 | $215 | $0 | $0 | $215 | $0 | $222 | $0 | $0 | $222 |
| Taxes-LLC | $0 | $800 | $0 | $0 | $800 | $0 | $800 | $0 | $0 | $800 |
| Taxes - Property (Reserve Acct.) | $0 | $7,094 | $0 | $7,094 | $14,187 | $0 | $7,235 | $0 | $7,235 | $14,471 |
| Total Tax Expense | $0 | $8,109 | $0 | $7,094 | $15,203 | $0 | $8,257 | $0 | $7,235 | $15,493 |
| Utilities | | | | | | | | | | |
| Utilities - Electricity\* | $796 | $796 | $796 | $796 | $3,186 | $836 | $836 | $836 | $836 | $3,345 |
| Utilities - Gas | $1,885 | $1,571 | $942 | $1,885 | $6,283 | $1,941 | $1,618 | $971 | $1,941 | $6,472 |
| Utilities - Water & Sewer\* | $3,148 | $3,148 | $3,148 | $3,148 | $12,591 | $3,242 | $3,242 | $3,242 | $3,242 | $12,968 |
| Trash Service | $760 | $760 | $760 | $760 | $3,039 | $767 | $767 | $767 | $767 | $3,070 |
| Total Utilities | $6,589 | $6,275 | $5,646 | $6,589 | $25,099 | $6,787 | $6,464 | $5,817 | $6,787 | $25,855 |

Exhibit B1

Exhibit B1, Page 000035

In re 450 S Burlington Partners, LLC, Case No. 2:09-bk-15319-SB

10 Year Financial Projections

| | 1st Quarter 2012 | 2nd Quarter 2012 | 3rd Quarter 2012 | 4th Quarter 2012 | 2012 | 1st Quarter 2013 | 2nd Quarter 2013 | 3rd Quarter 2013 | 4th Quarter 2013 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|
| Insurance Expense | | | | | | | | | | |
| Insurance - Property | $0 | $9,225 | $0 | $0 | $9,225 | $0 | $9,410 | $0 | $0 | $9,410 |
| Total Insurance Expenses | $0 | $9,225 | $0 | $0 | $9,225 | $0 | $9,410 | $0 | $0 | $9,410 |
| Repairs & Maintenance | | | | | | | | | | |
| Appliance Repair | $172 | $172 | $172 | $172 | $688 | $172 | $172 | $172 | $172 | $688 |
| Carpet Cleaning | $60 | $60 | $60 | $60 | $240 | $60 | $60 | $60 | $60 | $240 |
| Electrical Repair | $63 | $63 | $63 | $63 | $250 | $63 | $63 | $63 | $63 | $250 |
| Fire System Servicing & Repair | $125 | $125 | $125 | $125 | $500 | $250 | $250 | $250 | $250 | $1,000 |
| Locksmith | $50 | $50 | $50 | $50 | $200 | $50 | $50 | $50 | $50 | $200 |
| Landscaping Labor/Gardener | $205 | $205 | $205 | $205 | $820 | $210 | $210 | $210 | $210 | $840 |
| Painting | $520 | $520 | $520 | $520 | $2,081 | $531 | $531 | $531 | $531 | $2,122 |
| Plumbing | $693 | $693 | $693 | $693 | $2,772 | $693 | $693 | $693 | $693 | $2,772 |
| Repair & Maintenance | $1,719 | $1,719 | $1,719 | $1,719 | $6,875 | $1,770 | $1,770 | $1,770 | $1,770 | $7,081 |
| Total Repairs & Maintenance | $3,606 | $3,606 | $3,606 | $3,606 | $14,425 | $3,798 | $3,798 | $3,798 | $3,798 | $15,193 |
| Total Operating Expenses | $15,456 | $31,995 | $13,592 | $21,628 | $82,671 | $15,996 | $32,878 | $14,103 | $22,310 | $85,287 |
| Net Operating Income | $20,564 | $4,025 | $22,428 | $14,392 | $61,409 | $21,505 | $4,624 | $23,398 | $15,192 | $64,718 |
| | | | | | | | | | | |
| Capital Expenses & Reserves | $1,800 | $1,800 | $1,800 | $1,800 | $7,200 | $1,800 | $1,800 | $1,800 | $1,800 | $7,200 |
| Earnings Before Interest & Taxes (EBIT) | $18,764 | $2,225 | $20,628 | $12,592 | $54,209 | $19,705 | $2,824 | $21,598 | $13,392 | $57,518 |
| Reorganization Plan Payments | | | | | | | | | | |
| 1st TD - City of Los Angeles | $6,836 | $6,836 | $6,836 | $6,836 | $27,344 | $6,836 | $6,836 | $6,836 | $6,836 | $27,344 |
| 2nd TD - Victor Ritter (Rev. $206K, 4%, i-only) | $2,047 | $2,047 | $2,047 | $2,047 | $8,188 | $2,047 | $2,047 | $2,047 | $2,047 | $8,188 |
| 3rd TD - Joseph Kurn (Rev. $325K, 4%, i-only) | $3,255 | $3,255 | $3,255 | $3,255 | $13,020 | $3,255 | $3,255 | $3,255 | $3,255 | $13,020 |
| Unsecured Creditor Payments | $425 | $425 | $425 | $425 | $1,700 | $425 | $425 | $425 | $425 | $1,700 |
| | | | | | | | | | | |
| Earnings Before Taxes (EBT) | $6,201 | ($10,338) | $8,065 | $29 | $5,657 | $7,142 | ($9,739) | $9,035 | $829 | $8,966 |
| | | | | | | | | | | |
| Member Contributions to Cover Any Shortfall | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | | | | | |
| Cash Balance Beginning | $19,034 | $25,234 | $14,897 | $22,962 | $19,034 | $22,991 | $30,133 | $20,393 | $29,428 | $22,991 |
| Add / (Less) EBT | $6,201 | ($10,338) | $8,065 | $29 | $3,957 | $7,142 | ($9,739) | $9,035 | $829 | $7,266 |
| Add Member Contributions | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Ending Bank Balance | $25,234 | $14,897 | $22,962 | $22,991 | $22,991 | $30,133 | $20,393 | $29,428 | $30,257 | $30,257 |

* Calculated Monthly Figure
However, the bill is paid every other month.

In re 450 S Burlington Partners, LLC, Case No. 2:09-bk-15319-SB

10 Year Financial Projections

| | 1st Quarter 2014 | 2nd Quarter 2014 | 3rd Quarter 2014 | 4th Quarter 2014 | 2014 | 1st Quarter 2015 | 2nd Quarter 2015 | 3rd Quarter 2015 | 4th Quarter 2015 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|
| **\*\*INCOME\*\*** | | | | | | | | | | |
| RENT REVENUE | | | | | | | | | | |
| Base Rent | $42,774 | $42,774 | $42,774 | $42,774 | $171,095 | $44,057 | $44,057 | $44,057 | $44,057 | $176,228 |
| Less: Employee Unit | ($1,659) | ($1,659) | ($1,659) | ($1,659) | ($6,636) | ($1,709) | ($1,709) | ($1,709) | ($1,709) | ($6,835) |
| Less: Vacancy | ($2,566) | ($2,566) | ($2,566) | ($2,566) | ($10,266) | ($3,084) | ($3,084) | ($3,084) | ($3,084) | ($12,336) |
| NET RENT REVENUE | $38,548 | $38,548 | $38,548 | $38,548 | $154,194 | $39,264 | $39,264 | $39,264 | $39,264 | $157,057 |
| OTHER INCOME | | | | | | | | | | |
| Laundry Income | $300 | $300 | $300 | $300 | $1,200 | $300 | $300 | $300 | $300 | $1,200 |
| RSO Fee | $40 | $40 | $40 | $40 | $159 | $40 | $40 | $40 | $40 | $159 |
| Scap fee | $151 | $151 | $151 | $151 | $604 | $151 | $151 | $151 | $151 | $604 |
| Total Other Income | $491 | $491 | $491 | $491 | $1,963 | $491 | $491 | $491 | $491 | $1,963 |
| TOTAL INCOME | $39,039 | $39,039 | $39,039 | $39,039 | $156,157 | $39,755 | $39,755 | $39,755 | $39,755 | $159,020 |
| **EXPENSES** | | | | | | | | | | |
| Salary Expenses | | | | | | | | | | |
| Salary - Manager | $1,149 | $1,149 | $1,149 | $1,149 | $4,595 | $1,206 | $1,206 | $1,206 | $1,206 | $4,824 |
| Workers Comp Insurance | $51 | $51 | $51 | $51 | $205 | $52 | $52 | $52 | $52 | $209 |
| Payroll Taxes | $132 | $132 | $132 | $132 | $529 | $132 | $132 | $132 | $132 | $529 |
| Total Employee Benefits | $1,332 | $1,332 | $1,332 | $1,332 | $5,328 | $1,390 | $1,390 | $1,390 | $1,390 | $5,562 |
| General & Administrative | | | | | | | | | | |
| Bank Service Charges | $75 | $75 | $75 | $75 | $300 | $75 | $75 | $75 | $75 | $300 |
| Bookkeeping/Accounting Fees | $0 | $480 | $0 | $0 | $480 | $0 | $500 | $0 | $0 | $500 |
| DOJ Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Legal Fees | $250 | $250 | $250 | $250 | $1,000 | $250 | $250 | $250 | $250 | $1,000 |
| Miscellaneous Expense | $73 | $73 | $73 | $73 | $290 | $75 | $75 | $75 | $75 | $300 |
| Operating Supplies | $184 | $184 | $184 | $184 | $735 | $188 | $188 | $188 | $188 | $750 |
| Pest Control | $591 | $591 | $591 | $591 | $2,364 | $609 | $609 | $609 | $609 | $2,434 |
| Equipment Lease Fee | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rent Stabilization Ordinance Fee | $318 | $0 | $0 | $0 | $318 | $318 | $0 | $0 | $0 | $318 |
| Systematic Code Enforcement Program | $604 | $0 | $0 | $0 | $604 | $604 | $0 | $0 | $0 | $604 |
| Telephone | $219 | $219 | $219 | $219 | $878 | $226 | $226 | $226 | $226 | $904 |
| Professional Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Third Party Management Fee | $1,927 | $1,927 | $1,927 | $1,927 | $7,710 | $1,963 | $1,963 | $1,963 | $1,963 | $7,853 |
| Total General & Administrative | $4,241 | $3,799 | $3,319 | $3,319 | $14,678 | $4,307 | $3,885 | $3,385 | $3,385 | $14,963 |
| Tax Expense | | | | | | | | | | |
| Taxes - Business | $0 | $228 | $0 | $0 | $228 | $0 | $235 | $0 | $0 | $235 |
| Taxes-LLC | $0 | $800 | $0 | $0 | $800 | $0 | $800 | $0 | $0 | $800 |
| Taxes - Property (Reserve Acct.) | $0 | $7,380 | $0 | $7,380 | $14,760 | $0 | $7,528 | $0 | $7,528 | $15,056 |
| Total Tax Expense | $0 | $8,409 | $0 | $7,380 | $15,789 | $0 | $8,563 | $0 | $7,528 | $16,091 |
| Utilities | | | | | | | | | | |
| Utilities - Electricity\* | $878 | $878 | $878 | $878 | $3,512 | $922 | $922 | $922 | $922 | $3,688 |
| Utilities - Gas | $2,000 | $1,666 | $1,000 | $2,000 | $6,666 | $2,060 | $1,716 | $1,030 | $2,060 | $6,866 |
| Utilities - Water & Sewer\* | $3,339 | $3,339 | $3,339 | $3,339 | $13,358 | $3,440 | $3,440 | $3,440 | $3,440 | $13,758 |
| Trash Service | $775 | $775 | $775 | $775 | $3,101 | $783 | $783 | $783 | $783 | $3,132 |
| Total Utilities | $6,992 | $6,659 | $5,992 | $6,992 | $26,636 | $7,204 | $6,861 | $6,174 | $7,204 | $27,443 |

Exhibit B1